# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MICHAEL PARKER,                          :
                                         :
       Petitioner,              :
                                         :
   v.                                    :   Civil Action No. 18-612-LPS
                                         :
CLAIRE DEMATTEIS, Commissioner,          :
Delaware Department of Corrections,      :
ROBERT MAY, Warden,                      :
and ATTORNEY GENERAL OF THE              :
STATE OF DELAWARE,                       :
                                         :
       Respondents.[1]          :

---

## **MEMORANDUM OPINION**

Nicole Marie Walker, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Counsel for Petitioner.

Carolyn Shelley Hake, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

August 20, 2021
Wilmington, Delaware

---

[1]Warden Robert May replaced former Warden Dana Metzger, an original party to the case.  *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

Presently pending before the Court is Petitioner Michael Parker's ("Petitioner") Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 2) The State filed an Answer in opposition. (D.I. 13) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I.    BACKGROUND

On June 10, 2011, a Delaware Superior Court jury convicted Petitioner of delivery of cocaine. (D.I. 13 at 1) The Superior Court sentenced Petitioner as a habitual offender on June 24, 2011 to eight years of incarceration at Level V, followed by six months at Level IV supervision or home confinement. The Delaware Supreme Court affirmed Petitioner's conviction and sentence. *See Parker v. State*, 35 A.3d 419 (Table), 2011 WL 6199940 (Del. Dec. 13, 2011).

On May 21, 2012, Petitioner filed a *pro se* motion for postconviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Delaware Superior Court denied the Rule 61 motion on November 20, 2012, and the Delaware Supreme Court affirmed that decision on November 4, 2013. *See Parker v. State*, 80 A.3d 960 (Table), 2013 WL 5947620 (Del. Nov. 4, 2013).

In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the Office of the Chief Medical Examiner ("OCME") which revealed, *inter alia*, that OCME employees had been stealing drug evidence. *See Brown v. State*, 108 A.3d 1201, 1204 (Del. 2015). Starting in the spring of 2014, the Office of Defense Services ("ODS") filed Rule 61 motions[2] in the Superior Court on behalf of more than 700 defendants, asserting identical claims for relief arising

---

[2]A Rule 61 motion is a motion for post-conviction relief filed pursuant to Delaware Superior Court Criminal Rule 61.

from issues relating to the evidence scandal in the OCME; namely, that the OCME misconduct

constituted impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963).

On December 23, 2014, the ODS filed a Rule 61 motion on Petitioner's behalf based on the

misconduct at the OCME. Thereafter, the ODS chose the Rule 61 motions of eight other

defendants for the Superior Court to decide ("Rule 61/OCME Test Case"). *See State v. Miller*, 2017

WL 1969780, at *1 (Del. Super. Ct. May 11, 2017). Since the Rule 61 motions filed by the ODS in

numerous other cases were identical to those in the Rule 61/OCME Test Case, the parties in those

other cases agreed that the Superior Court's decision in the Rule 61/OCME Test Case would

resolve many of the remaining outstanding Rule 61 motions pending before the Superior Court,

including the Rule 61 motion of Petitioner. *Id.*; *see also* D.I. 14-27.

The Superior Court denied the Rule 61 motions in the Rule 61/OCME Test Case on May

11, 2017. *See Miller*, 2017 WL 1969780, at *1. Thereafter, in Petitioner's Rule 61 proceeding, the

Superior Court directed the State to have the drug evidence from Petitioner's trial re-tested by

another laboratory.[3] The re-test results from NMS Labs confirmed the existence cocaine in the drug

evidence. (D.I. 13 at 4) Petitioner responded, arguing that there was still a *Brady* violation because

there were discrepancies among the weight of the field tested cocaine (0.4 grams), the weight of the

cocaine listed in the OCME report (0.05 grams), and the weight of the cocaine listed in the NMS

Labs report (less than 0.01 grams). (D.I. 14-30) The Superior Court denied Parker's Rule 61 motion

on April 13, 2018, finding that the weight of the drugs was irrelevant to establishing the commission

of the offense of delivery of cocaine. (D.I. 14-32 at 2) The Superior Court held that, "to the extent

there was *Brady* information, it would have been disclosed and the latest testing confirms that the

---

[3]The evidence submitted during Petitioner's trial was available for retesting because it had been
maintained by the Prothonotary's Office. (D.I. 2-4)

substance utilized during this transaction was in fact cocaine, the only finding relevant to this charge." (D.I. 14-32 at 2)  According to the Superior Court: (1) the weight of the substance was not an element of the indicted charge and thus the weight of the cocaine was not significant evidence at trial; (2) the charged offense only required a showing of a drug transaction between Petitioner and another individual, and the evidence was overwhelming in Petitioner's case because officers actually observed the transaction and found drugs when the purchaser's vehicle was stopped and the purchaser confirmed that she had purchased those drugs from Petitioner only moments before; (3) the re-testing confirmed that the substance exchanged during the transaction was in fact cocaine; (4) the weight of the substance was not critical to the defense, and defense counsel stipulated to the drug report because Petitioner's defense was misidentification – that the purchaser had purchased cocaine from someone else; and (5) defense counsel would have been aware that there was a discrepancy in the weight of the cocaine because the police report and the OCME lab report revealed a drug weight discrepancy, and defense counsel could have used that discrepancy to attack the credibility of the purchaser and other witnesses if counsel had thought the discrepancy would be helpful to Petitioner. (*Id.*)  Petitioner did not appeal that decision.

Instead, on April 23, 2018, Petitioner filed the § 2254 Petition presently pending before the Court, asserting that the OCME misconduct constituted powerful impeachment material under *Brady v. Maryland*.  Petitioner contends that the suppression of the OCME misconduct evidence affected the outcome of his trial; he specifically asserts that "evidence of the OCME misconduct may very well have prevented suspected drug evidence from coming in at trial." (D.I. 2 at 15)

Soon after filing the instant Petition, Petitioner and several other federal habeas petitioners represented by the ODS with petitions asserting the same OCME evidence misconduct issue filed a joint motion to stay briefing until this Court resolved *Boyer v. Akinbayo*, Civ. A. No. 17-834-LPS, a

case with the same procedural issue (*i.e.*, whether the petitioner's failure to appeal the Superior Court's denial of his Rule 61 motion precluded habeas relief due to his purposeful failure to exhaust state remedies). On November 6, 2018, the Court dismissed Boyer's habeas petition as procedurally barred and declined to issue a certificate of appealability. *See Boyer v. Akinbayo*, 2018 WL 5801545 (D. Del. Nov. 6, 2018). Boyer filed a notice of appeal with the Third Circuit Court of Appeals. On April 11, 2019, the Third Circuit denied Boyer's request for a certificate of appealability because "[j]urists of reason could not debate that the District Court properly denied Appellant's 28 U.S.C. § 2254 habeas petition." (*Boyer*, Civ. A. No. 17-834-LPS D.I. 23)

Following the decision in *Boyer*, the Court lifted the stay in the instant proceeding. Thereafter, the State filed an Answer asserting that the Petition should be dismissed as procedurally barred because Petitioner, like Boyer, did not present his claim to the Delaware Supreme Court on direct or post-conviction appeal. (D.I. 13 at 15-27) The State also argues that the Petition should be dismissed as time-barred.[4] Petitioner did not file a reply.

## II.    GOVERNING LEGAL PRINCIPLES

### A. Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

---

[4]Since the exhaustion/procedural bar issue is dispositive, the Court will not address the statute of limitations argument raised by the State.

4

States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by fairly presenting all claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner may be excused from exhausting state remedies when there is either an absence of an available State corrective process or the existence of circumstances, such as futility or inordinate delay, that render such processes ineffective. *See* 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano*, 454 U.S. 1 (1981). Situations falling within the "ineffective corrective process" exception to the exhaustion requirement include those instances when "(1) the state corrective process is so deficient as to render any effort to obtain relief futile . . . ; (2) acts of state officials have, in effect, made state remedies unavailable to the petitioner . . . ; or (3) 'inordinate delay' in state proceedings has rendered state remedies ineffective." *Kozak v. Pennsylvania*, 2012 WL 4895519, at *4 (M.D. Pa.

5

Oct 15, 2012).  When a failure to exhaust is excused due to an ineffective corrective process, the court may review a claim on its merits without engaging in the procedural default analysis. *See, e.g., Lee v. Stickman*, 357 F.3d 338, 344 (3d Cir. 2004); *Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994); *Woodruff v. Williams*, 2016 WL 6124270, at *1 (E.D. Pa. Oct. 19, 2016).

However, a petitioner's failure to exhaust does not fall within the aforementioned "ineffective corrective process" exception; when state procedural rules bar the petitioner from seeking further relief in state courts, the claims – while technically exhausted – are procedurally defaulted. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)(noting that "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him"). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is technically exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).  A federal court cannot consider the merits of procedurally defaulted claims unless the petitioner establishes cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will result absent review of the claims. *See Lines*, 208 F.3d at 160.

## III.   DISCUSSION

### A.  Exhaustion

Petitioner acknowledges that he did not exhaust state remedies for his habeas Claim due to his failure to appeal the denial of his Rule 61 motion to the Delaware Supreme Court.  (D.I. 2 at 4) Nevertheless, Petitioner presents three futility arguments for why the Court should excuse his failure to exhaust: (1) exhausting state remedies by appealing the Superior Court's Rule 61 decision would

6

have been futile because of the Superior Court's inordinate delay in adjudicating his Rule 61 motion

("inordinate delay" excuse); (2) appealing the denial of his Rule 61 motion to the Delaware Supreme

Court would have been futile because that court has rejected identical claims based upon the OCME

misconduct in other cases for postconviction relief ("futility on the merits" excuse); and

(3) appealing the denial of the Rule 61 motions to the Delaware Supreme Court would have been

futile because Rule 61 does "not provide an adequate opportunity for [Petitioner] to obtain relief"

("futility due to deficiency of Rule 61 proceedings" excuse) (D.I. 2 at 4-7). The State contends that

Petitioner's failure to exhaust should not be excused for any of these futility reasons and, since state

criminal procedural rules preclude them from returning to the state courts for further review, the

claim is now technically exhausted but procedurally defaulted. (D.I. 13 at 15-26)

The Court will discuss each of Petitioner's arguments below.

### 1. Futility Due to Inordinate Delay During Rule 61 Proceeding

"[I]nexcusable or inordinate delay by the state in processing claims for relief may render the

state remedy effectively unavailable," thereby warranting excusing the exhaustion requirement. *Story*,

26 F.3d at 405. "The existence of an inordinate delay does not automatically excuse the exhaustion

requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be

required." *Lee*, 357 F.3d at 341.

Neither the United States Supreme Court nor the Third Circuit has defined a specific

amount of time that constitutes inordinate delay in a petitioner's post-conviction proceedings. As

explained by the Third Circuit,

> We stated in *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986), that
> "inexcusable or inordinate delay by the state in processing claims for
> relief may render the state remedy effectively unavailable." In that
> case, thirty-three months had passed after the petitioner's PCRA filing
> without resolution. *Id.* This, we found, excused the petitioner's failure

7

to exhaust his state court remedies. *Id.* at 356.  The thirty-three month delay in *Wojtczak* remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement.

*Cristin v. Brennan,* 281 F.3d 404, 411 (3d Cir. 2002) (refusing to excuse exhaustion in face of twenty-seven month delay); *see also Lee,* 357 F.3d at 343-44 (excusing exhaustion after eight year delay); *Coss v. Lackawanna County Dist. Att'y,* 204 F.3d 453, 460 (3d Cir. 2000) (*en banc*) (excusing exhaustion after seven year delay), *rev'd on other grounds,* 532 U.S. 394 (2001); *Story,* 26 F.3d at 406 (excusing exhaustion after nine year delay).  Generally, courts in the Third Circuit have excused a petitioner's failure to exhaust state remedies where the following three factors are present: (1) the delays in the state court proceedings have amounted to three, five, eleven, or twelve years;[5] (2) no meaningful action towards resolution has been taken in the state court; and (3) the delay was not attributable to the petitioner. *See Simmons v. Garman,* 2017 WL 2222526, at *3 (E.D. Pa. Feb. 14, 2017).

Federal courts consider the degree of progress made by the state courts when determining whether a delay is inordinate.  *See Lee,* 357 F.3d at 342.  In cases in which courts have excused exhaustion due to an inordinate delay, the delay in the petitioner's state post-conviction proceedings was still ongoing at the time of federal habeas review.  *See Wojtczak,* 800 F.2d at 354 (unresolved after thirty-three months); *cf. Cristin,* 281 F.3d at 411 (concluding that thirty-three month delay did not excuse exhaustion under inordinate delay exception as state court ruled on Cristin's state post-conviction petition one week after he filed his federal habeas petition); *Wallace v. Dragovich,* 143 F. App'x 413, 418 (3d Cir. 2005) (finding that petitioner's failure to exhaust was not excusable on basis of inordinate delay, where previously stalled state habeas proceeding had resumed).  The Court has

---

[5] *See Story,* 26 F.3d at 405-06 (citing cases).

8

not identified any cases holding that a petitioner's failure to exhaust can be excused on the basis of a delay in a state post-conviction proceeding when that delay has already ended. *See, e.g., Vreeland v. Davis*, 543 F. App'x 739, 741-42 (10th Cir. 2013).

Here, Petitioner did not appeal the denial of his Rule 61 motion. In fact, he admits he purposefully decided to forgo a post-conviction appeal in order to proceed immediately with a federal habeas petition. (D.I. 2 at 4) Petitioner asserts that the three-year span between the filing of his Rule 61 motion and the Superior Court's adjudication of that motion constitutes inordinate delay and the possibility of continued delay in the Delaware Supreme Court "unnecessarily risk[ed] mooting [Petitioner's] federal claims before [he] [would be] able to reach Federal Court." (D.I. 2 at 6)

The Court rejected an almost identical argument in *Boyer* because Boyer's post-conviction proceeding was not in a state of suspended animation when he filed his habeas Petition. *See Boyer*, 2018 WL 5801545, at \*4-5. The Court also noted that Boyer's mistrust of the Delaware Supreme Court's ability to decide his post-conviction appeal within a certain time-frame was insufficient to excuse him from exhausting state court remedies for his claim. *See id.*

Like Boyer, at the time Petitioner filed his Petition, his Rule 61 motion was not in a state of suspended animation. The purported delay in state court proceedings did not make pursuing the state court remedy futile. As a result, Petitioner's allegations of inordinate delay do not excuse his failure to exhaust.

## 2. **Futility on the Merits**

Petitioner also asks the Court to excuse his failure to exhaust on the ground that it would have been futile to present his claim to the Delaware Supreme Court, because that court has already considered and rejected numerous identical or similar OCME misconduct claims. (D.I. 2 at 4-6)

But futility on the merits does not constitute cause for a procedurally defaulted claim. *See Engle v. Isaac*, 456 U.S. 107, 130 (1982) (petitioner "may not bypass the state courts simply because he thinks they will be unsympathetic to the claim"). The Third Circuit has applied *Engle*'s reasoning in the context of exhaustion, opining that "likely futility on the merits . . . in state court of a petitioner's habeas claim does not render that claim exhausted within the meaning of § 2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting it in state court before asserting in a federal habeas petition." *Parker v. Kelchner*, 429 F.3d 58, 64 (3d Cir. 2005). More specifically, "[a]llowing petitioners to bypass state court merely because they believe that their constitutional claims would have failed there on the merits would fly in the face of comity and would deprive state courts of a critical opportunity to examine and refine their constitutional jurisprudence." *Id.*

Both the procedural history of Petitioner's Rule 61 proceeding and the instant "futility on the merits" argument are substantially similar to the procedural history of Boyer's Rule 61 proceeding and Boyer's "futility on the merits" argument. *See Boyer*, 2018 WL 5801545, at *4-5. Applying the reasoning in *Engle* and *Parker*, the Court declined to excuse Boyer's failure to exhaust his claims on the basis of "likely futility on the merits." *Id.* at *5. The Third Circuit agreed; it declined to grant Boyer a certificate of appealability, explicitly stating, "We have rejected the argument that likely futility on the merits of a claim in state court excuses a habeas petitioner's failure to exhaust that claim." (*See* Civ. A. No. 17-834-LPS D.I. 23) Given these circumstances, the Court concludes that Petitioner's failure to exhaust state remedies is not excused on the ground of likely futility on the merits.

### 3. Deficient Rule 61 procedures

In his last attempt to justify the failure to exhaust state remedies, Petitioner contends that Rule 61's procedures are so deficient that the Rule would not have provided him with an

10

opportunity to obtain relief, thereby demonstrating that it would have been futile to present his claim to the Delaware Supreme Court on post-conviction appeal. (D.I. 2 at 4-7) However, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Dist. Attorney's Office for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009). Federal courts may excuse the exhaustion requirement when "it appears that the prisoner's rights have become an 'empty shell' or that the state process is a 'procedural morass' offering no hope of relief." *Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir. 1991).

Here, Petitioner does not substantiate his contention that Rule 61 is inadequate, nor does he cite any case finding that Rule 61 is a deficient corrective process. In fact, this Court has consistently found that Rule 61 is an independent and adequate state procedural ground that precludes federal habeas review. *See, e.g., Trice v. Pierce*, 2016 WL 2771123, at *4 (D. Del. May 13, 2016); *Maxion v. Snyder*, 2001 WL 848601, at *10 (D. Del. July 27, 2001). Petitioner's conclusory allegations about the inadequacy of Rule 61 do not demonstrate that its procedures are an "empty shell" or a "procedural morass offering no hope for relief."

In sum, for the aforementioned reasons, the Court concludes that Petitioner's failure to exhaust state remedies does not fall within the narrow "futility" exception to the exhaustion doctrine.

## B. Procedural Default

Having determined that Petitioner's intentional failure to appeal the denial of his Rule 61 motion is not excusable, Petitioner's habeas Claim remains unexhausted. At this juncture, any attempt by Petitioner to exhaust state remedies by presenting the Claim in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive

11

under Rule 61(i)(2). *See* Del. Super. Ct. Crim R. 61(i)(1) (establishing one year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (barring second or successive Rule 61 motion unless certain pleading requirements are satisfied). Consequently, the Court must treat the Claim as technically exhausted but procedurally defaulted, which means that the Court cannot review the merits of the Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review. *See Lines*, 208 F.3d at 160.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

To the extent Petitioner's three-pronged futility argument should also be viewed as an attempt to establish cause for his procedural default, the argument is unavailing. In order to

establish cause, Petitioner must demonstrate that an external factor prevented him from appealing the denial of his Rule 61 motion. Nothing, however, prevented Petitioner from filing a post-conviction appeal; he simply elected not to do so. Thus, Petitioner's belief that it would have been futile to present his claim to the Delaware Supreme does not constitute cause for his procedural default.

In the absence of cause, the Court does not need to address prejudice. Nevertheless, Petitioner also cannot establish prejudice. Since Petitioner stipulated to the contents of the lab report, and nobody from the OCME testified at Petitioner's trial, it is unclear how the State's failure to reveal the OCME evidence misconduct scandal prior to his trial in 2011 denied him the opportunity to use the impeachment evidence during his trial. The Court further concludes that the miscarriage of justice exception does not excuse Petitioner's procedural default, because Petitioner has not provided new reliable evidence of his actual innocence. Nor could he present such evidence, since the re-testing of the drug evidence revealed that the alleged cocaine did, in fact, test positive for cocaine. Accordingly, the Court will deny the instant Petitions as procedurally barred from federal habeas review.

## IV. EVIDENTIARY HEARING

As an alternative request for relief, Petitioner summarily asks the Court to "hold an evidentiary hearing and allow full briefing on his claim." (D.I. 2 at 15) It is unclear whether he requests an evidentiary hearing on the underlying OCME misconduct claim or on the procedural default of that claim.

### A. Evidentiary Hearing On OCME Misconduct Claim

The AEDPA permits evidentiary hearings on habeas review in a limited number of

13

circumstances.[6]  *See Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).  For instance, 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
>> (A) the claim relies on –
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

---

[6]Prior to the enactment of AEDPA, "the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  However, evidentiary hearings were mandatory in six specific circumstances: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *See Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  While AEDPA has not changed the "basic rule" of leaving the decision to grant an evidentiary hearing to the discretion of the district courts, it has imposed certain limitations on the exercise of that discretion via § 2254(e)(2).  *See Cristin*, 281 F.3d at 413.

The "initial inquiry" when determining whether to grant an evidentiary hearing is whether the petitioner has "failed to develop the factual basis" of the claim in state court. *See* 28 U.S.C. 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420, 433 (2000). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 433. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. When determining if a petitioner has been diligent, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435. In short, if the factual basis of the claim was not developed but the petitioner was diligent in pursuing the claim in state court, the opening phrase of § 2254(e)(2) does not bar an evidentiary hearing. *See Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011).

Nevertheless, "a petitioner who diligently but unsuccessfully seeks an evidentiary hearing in state court still is not ***entitled*** to an evidentiary hearing in federal court under AEDPA. Rather, . . . whether to hold a hearing for a petitioner who is not at fault under § 2254(e)(2) remains in the discretion of the district court, and depends on whether the hearing would have the potential to advance the petitioner's claim." *Taylor v. Horn*, 504 F.3d 416, 444 (3d Cir. 2007) (emphasis in original); *see also Schriro*, 550 U.S. at 473 (explaining that "basic" pre-AEDPA rule, leaving decision on whether to grant evidentiary hearing to "sound discretion of district courts," has not changed under AEDPA). "Where a petitioner fails to forecast to the district court evidence outside the record that would help his cause or 'otherwise to explain how his claim would be advanced by an evidentiary hearing,' a court is within its discretion to deny the claim." *Buda v. Stickman*, 149 F. App'x 86, 90 (3d Cir. 2005).

Here, although an evidentiary hearing was not held in Petitioner's Rule 61 proceeding, Petitioner does not explain how the factual basis of his claim needs further development as part of his federal habeas review.[7]  The record also indicates that Petitioner agreed to forego a Rule 61 evidentiary hearing.[8]  (*See* D.I. 14-27 at 4, 8, 12, 35)  Given these circumstances, the Court perceives no basis to exercise its discretion to conduct an evidentiary hearing here.

## B.   Evidentiary Hearing on Procedural Default

The Third Circuit has held that § 2254(e)(2) does not bar an evidentiary hearing to determine if a petitioner can establish cause and prejudice to avoid a procedural default.  *See Cristin*, 281 F.3d at 416-17 ("[T]he plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level.").  Consequently, it is within the Court's discretion to hold an evidentiary hearing on Petitioner's excuses for his failure to appeal the denial of his Rule 61 motion.

As previously discussed,[9] the Court has considered, and rejected, Petitioner's reasons for the procedural default, and he does not indicate any other evidence/reason that may excuse his failure

---

[7]Notably, the Superior Court denied Petitioner's Rule 61 motion because the weight of the drug evidence was not an issue, Petitioner stipulated to the drug evidence, and the retesting of the drug evidence showed that the drugs were cocaine.

[8]The state record contains an exhibit entitled "Evidentiary Supplement" that consists of correspondence between the ODS, the State, and the Superior Court concerning the necessity of an evidentiary hearing in the Rule 61/OCME test case.  (D.I. 14-27)  The exhibit includes a list of all Rule 61 cases affected by the decision in the Rule 61/OCME test case, including Petitioner's case. (D.I. 14-27 at 2-7)  The exhibit also contains a letter filed by the ODS wherein the ODS asserts that "Petitioners agree that an evidentiary hearing is not necessary" (D.I. 14-27 at 35), as well as a letter from the ODS stating that the "above-referenced arguments [concerning the effect of the State's failure to disclose the OCME evidence misconduct] apply to all pending OCME cases" (D.I. 14-27 at 12).  Viewing these documents together suggests that Petitioner knowingly waived an evidentiary hearing in state court, and admitted that the OCME misconduct/*Brady* issue was legal in nature.

[9]*See supra* at III.A and B.

16

to appeal the denial of his Rule 61 motions. Therefore, the Court will not hold an evidentiary hearing on the issue of procedural default.

## V.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons discussed, the Court concludes that the Petitions must be denied. An appropriate Order will be entered.